**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**TANNER COMPANIES, INC.**                                            **CIVIL ACTION**

**VERSUS**                                                                               **NO: 07-2745**

**RELIABLE ONSHORE SERVICES**                                   **SECTION "T"(1)**
**COMPANY, LLC AND ALLEN R.**
**WOODARD**

## ORDER AND REASONS

Before the Court are the following Motions: (1) a Motion to Compel Arbitration filed by Reliable Offshore Services Company, LLC and Allen Woodard, Rec. Doc. 20; (2) Tanner Companies, Inc.'s Motion for Preliminary Injunction, Rec. Doc. 25; (3) Tanner Companies, Inc.'s Motion for Preliminary Injunction to Enjoin Arbitration, Rec. Doc. 24; and (4) a Motion to Dismiss Declaratory Judgment Action filed by Reliable Onshore Services Company, LLC and Allen Woodard. Rec. Doc. 34. Oppositions to the Motion to Compel and the Motion to Dismiss were filed. The parties were ordered to file supplemental memoranda on August 20, 2007. Rec. Doc. 42. Motions (2) and (3) referenced above came for hearing on September 5, 2007, and were submitted on the briefs without oral argument. The Motion to Compel Arbitration came for hearing June 20, 2007, and was submitted on the briefs without oral argument. The Motion to Dismiss came for hearing August 15, 2007, and was submitted on the briefs without oral argument. The Court, having considered the memoranda and arguments of the parties, the law, and applicable jurisprudence is fully advised in the premises and ready to rule.

**I.      BACKGROUND AND PROCEDURAL HISTORY**

On April 26, 2006, Reliable Onshore Services Company, LLC (hereinafter, "ROSCO") and Reata Equity Partners, LLC, entered into an Asset Purchase Agreement (hereinafter, "the

1

Agreement") to purchase the business and assets of ROSCO. The Agreement was amended on August 22, 2006, wherein Reata Equity Partners, LLC assigned all of its rights to Tanner Companies, Inc. (hereinafter, "Tanner"). The Agreement provided that Tanner would purchase, with the exception of ROSCO's assets related to environmental services, all of the properties, assets, and rights of every nature, kind and description, tangible and intangible (including goodwill) related to or used or held for use or sale in connection with ROSCO's shallow water oil field pipeline maintenance and ancillary services business. *See* Exhibit "A", attached to Rec. Doc. 20 at p. 3. The Agreement further provided that the purchase price included the assumption or paying off of ROSCO's corporate debt and that Allen Woodard, the principal member of ROSCO, would be released as a personal guarantor on such debt including a release of any and all of his personal assets which may be held as collateral. *See* Exhibit "A", attached to Rec. Doc. 20 at Paragraph 1.4 (a). The conditions of the Agreement required, *inter alia,* that Allen Woodard enter into a "mutually acceptable Employment Agreement" which must contain, among other provisions,"... restrictive covenants prohibiting Allen R. Woodard and ROSCO from engaging, directly or indirectly, in any business that is the same as or similar to the Business [as defined in the Asset Purchase Agreement] within the United State of America for a period of three (3) years following the Closing." *See* Exhibit "A" attached to Rec. Doc. 20 at Paragraph4.1(j), p. 14. Allen Woodard, individually, was not a signatory to the Agreement or the August 22, 2006 amendment to the Agreement.

   The parties closed the transaction on September 1, 2006; however, there were post-closing obligations agreed to be performed by Tanner and ROSCO. Nevertheless, Tanner "completely integrated" the assets purchased from ROSCO with Tanner's pre-existing business and took over the servicing of ROSCO's corporate debt. Rec. Doc. 1 at p. 6. Allen Woodard (hereinafter,

"Woodard") remained on as the principal at ROSCO as to its environmental services business only. Woodard accepted employment at Tanner as its Senior Vice President of Operations.  In that role, Woodard was responsible for the day-to-day management of the newly acquired Tanner (formerly, ROSCO) facility in Houma, Louisiana and Tanner's Louisiana construction activities in Eunice, Louisiana.  Rec. Doc. 1 at p. 5.  Woodard eventually was elevated to managing all of the combined construction and marine divisions for Tanner.  *Id.*

A dispute over the terms of and payment under the agreement arose.  On April 18, 2007, ROSCO notified Tanner that it was declaring the Agreement dissolved in accordance with Louisiana law.  Rec. Doc. 1 at Paragraph 16.  Woodard resigned from Tanner shortly after this notification. ROSCO then filed a Petition for Temporary Restraining Order and Preliminary Injunction in Louisiana State Court asserting that Tanner failed to perform its obligations under the Agreement; namely, failing to pay ROSCO sums due and failing to assume ROSCO's corporate debt.  *See* Attachment "1" to Rec. Doc. 1 in Civil Action 07-2689; Rec. Doc. 1 at Paragraph 19 in Civil Action 07-2745.  The Temporary Restraining Order issued on April 20, 2007 and ordered that Tanner refrain from: (1) encumbering ROSCO's assets; (2) interfering with ROSCO's business operations; and (3) interfering with ROSCO's business relations with its customers. Rec. Doc. 1 at Paragraph 12.  In conjunction with the TRO, on April 23, 2007, ROSCO entered Tanner's Houma facility and took possession of the assets sold to Tanner and allegedly, assets ROSCO never owned.  Rec. Doc. 1 at Paragraph 17.  ROSCO also allegedly began to operate Tanner's Houma facility as its own and forced all the employees of the Tanner Houma office to resign.  Rec. Doc. 1 at Paragraph 18.

On April 24, 2007, Tanner sent representatives to its Houma office to assess whether any employees remained and to secure the facility.  Upon arrival, Woodard, allegedly, informed the

3

Tanner representatives that ROSCO dissolved the Agreement, taken back the Houma facility, and therefore, he would not permit Tanner to inspect the buildings or the equipment yard. Rec. Doc. 1 at Paragraph 18. Woodard also allegedly admitted keeping two (2) set of accounting books during his tenure as a Tanner employee, one for Tanner and one for ROSCO. Rec. Doc. 1 at Paragraph 18.

The state court action was removed to this Court on April 27, 2007, and given case number 07-2689. That action involved only ROSCO's Temporary Restraining Order and Motion for Preliminary Injunction. Since the Temporary Restraining Order expired and since Tanner and ROSCO agreed to submit the claims raised in the Motion for Preliminary Injunction to arbitration in accordance with the Agreement, that action has been dismissed without prejudice as there are not issues left to litigate before this Court. *See* Rec. Doc. 16, Civil Action 07-2689.

Tanner filed the instant declaratory judgment action on May 1, 2007, asserting that ROSCO did not have a right to unilaterally dissolve the Agreement under Louisiana law. Rec. Doc. 1. Further, Tanner asserts it is the fault of ROSCO that any amounts due under the Agreement have not been paid. Rec. Doc. 1 at Paragraphs, 20-21. Accordingly, Tanner requests a declaratory judgment declaring that the Agreement and Bill of Sale remain in full force and effect and that assets conveyed to Tanner pursuant to the Agreement and Bill of Sale are owned solely by Tanner. Rec. Doc. 1 at pp. 11-12. Tanner also requests attorneys' fees, costs and expenses incurred in bringing this suit. Rec. Doc. 1 at pp. 11-12. While Woodard is named as a defendant in the original Complaint seeking a declaratory judgment, there are not any requests for the Court to declare any rights as to him individually.

ROSCO and Woodard did not answer the suit but instead filed a Motion to Compel Arbitration pursuant to Paragraph 10.3 of the Agreement. Rec. Doc. 20. ROSCO claims it is

entitled to Arbitration because the claims raised are related to and arise out of the Agreement. Rec. Doc. 20. Woodard argues he is entitled to Arbitration because the Agreement contains an express stipulation in his favor making him a third-party beneficiary. As a third-party beneficiary, Woodard argues that he is entitled to enforce the Arbitration provision of the Agreement despite that he is not an actual signatory. Rec. Doc. 20 at p. 2 and Rec. Doc. 43 at pp. 2-3. Further, Woodard argues that the claims and allegations raised against him are identical to the claims raised against ROSCO in the arbitration proceeding and therefore, he should be entitled to compel arbitration. Rec. Doc. 43 at p. 4.

In response, Tanner filed an opposition and a Motion for Preliminary Injunction for the Court to enjoin arbitration arguing that arbitration of the dispute is not appropriate. Rec. Doc. 24. Tanner also filed a Motion for Preliminary Injunction, Rec. Doc. 25, requesting the Court require ROSCO and Woodard to: (1) vacate the Houma facility; (2) return all electronic equipment that were part of the sale of ROSCO to Tanner; (3) account for all receivables since September 1, 2006; (4) return all money received from Tanner companies since September 1, 2006 and deposited into a non-Tanner account; and (5) retain all records. Rec. Doc. 25 at pp. 1-2.

On July 23, 2007, Tanner amended and restated its Complaint (hereinafter, "Amended Complaint"). The Amended Complaint alleged for the first time independent causes of action against Woodard for the tort of conversion, tortious interference with Tanner's contracts with its customers, tortious interference with the Agreement because Woodard allegedly failed to facilitate the performance of the parties' mutual obligations under the agreement as was his duty as an officer of Tanner, breaches of Woodard's fiduciary duty and duty of loyalty to Tanner owed by an executive, defamation, libel, and slander. The Amended Complaint also requests an accounting of

5

all revenues and profits received as a result of Woodard's conduct.  Rec. Doc. 39 at pp. 10-12.

At an unknown point in time, but after the Motion to Compel Arbitration and the Motions for Preliminary Injunctions were filed, Tanner agreed to arbitrate its disputes related to and arising under the Agreement with ROSCO only.  Tanner's Opposition to Motion to Dismiss, Rec. Doc. 41 at p. 1. Tanner remains steadfast that it does not agree to arbitrate its dispute with Woodard and this issue has been briefed in supplemental memoranda to the Court.  The Arbitration between Tanner and ROSCO took place in October 2007, and the parties are currently waiting for the arbitrator's decision.

## II.     LAW AND ANALYSIS

The Court performs its analysis of each Motion filed individually.  Because ROSCO and Tanner have agreed to arbitrate the dispute as between themselves, as hereinafter discussed, some of the Motions and issues raised are moot.

*(1)     Motion to Compel Arbitration.*

Arbitration is favored in the law.  *See Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).  The general rule is that only signatories to an arbitration agreement may invoke the arbitration clause.  *See Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 875, 118 S.Ct. 1761, 1767 (1998); *Neal v. Hardee's Food Systems, Inc*., 918 F.2d 34, 37 (5th Cir. 1990).  Nevertheless, under limited circumstances a non-signatory to an arbitration agreement can compel arbitration against a signatory-plaintiff.  *See Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524 (5th Cir. 2000); *Washington Mut. Fin. Group, L.L.C. v. Bailey*, 364 F.3d 260 (5th Cir. 2004); *Hill v. G.E. Power Systems, Inc*., 282 F.3d 343 (5th Cir. 2002) (district court has discretion in deciding whether to grant motion to compel of non-signatory).  Six theories

for binding a non-signatory to an arbitration agreement have been recognized: (a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing/alter ego; (e) estoppel; and (f) third-party beneficiary." *Bridas S.A.P.I.C. v. Turkmenistan*, 345 F.3d 347, 356 (5th Cir.2003) cert. denied, 541 U.S. 937, 124 S.Ct. 1660, 158 L.Ed.2d 357 (2004); *Westmoreland v. Sadoux*, 299 F.3d 462 (5th Cir.2002).

ROSCO and Woodard argue that Tanner is compelled to arbitrate all claims raised by Tanner in its declaratory judgment action. Rec. Doc. 20. That Motion, insofar as it requests arbitration between ROSCO and Tanner is **MOOT.** ROSCO and Tanner have agreed to arbitrate the disputes arising under and related to the Agreement, which encompasses all the claims raised by Tanner against ROSCO in the declaratory judgment action filed in this Court on May 1, 2007. Rec. Doc. 1. Accordingly, the Motion to Compel Arbitration is **DENIED** as **MOOT** as it relates to ROSCO's compelling Tanner to arbitrate the claims raised against ROSCO in this matter.

The Motion to Compel Arbitration was brought not only by ROSCO but also by Woodard. Due to ROSCO and Tanner's agreement to arbitrate its claims, the Court allowed Woodard and Tanner to file supplemental briefs addressing in more detail the issue of whether Woodard, individually, could compel arbitration as to the claims brought against him despite that he is not a signatory to the Agreement. Rec. Doc. 42. Woodard is not a signatory to the agreement and this fact is not disputed. Nevertheless, Woodard argues that he can enforce arbitration under the agreement based upon on the following theories: (1) third-party beneficiary and (2) estoppel.

*(A). Third-Party Beneficiary*

A contracting party may stipulate a benefit for a third person, who is called a third-party beneficiary. LSA-CC art.1978. Under Louisiana law, such a contract is referred to as a *stipulation*

*pour autrui*. A *stipulation pour autrui* is never presumed. Rather, the intent of the contracting parties to stipulate a benefit in favor of a third party must be made manifestly clear. Additionally, to establish a *stipulation pour autrui*, the third-party relationship must form the consideration for a condition of the contract, and the benefit may not be merely incidental to the contract. The party demanding performance of an obligation pursuant to a *stipulation pour autrui* bears the burden of proving the existence of the obligation. *Boyte v. Louisiana Ag Credit, PCA* , 39-769, 39,569 (La.App. 2 Cir. 4/6/05); 899 So.2d 765, 768 (citations omitted).

The provision in the Asset Purchase Agreement relied upon by Woodard to demonstrate he is a third-party beneficiary provides:

> Reata [Tanner] will assume or pay off corporate debt of approximately Four Million Three Hundred Thousand and no/100 Dollars ($4,300,000.00). The parties will mutually agree as to the exact amount of such debt within thirty days from the date hereof. Allen [sic] Woodard shall be released as a personal guarantor on said liabilities and any and all of his personal assets which may be held as collateral shall likewise be released.

Contrary to Tanner's position, this provision does create a *stipulation pour autrui* in favor of Woodard. In exchange for being able to purchase the assets of ROSCO, Tanner had to agree to release Woodard as a guarantor and release his personal assets from being held as collateral. That stipulation to release Woodard from any and all personal liability in the body of the Agreement clearly contemplates a benefit to Woodard (a third person). Further, the benefit is not merely incident to the contract but was a condition or consideration of the contract. In other words, if this assumption of debt and release of personal liability of Woodard, who at the time was the principal of ROSCO, was not agreed to by Tanner, Tanner and ROSCO would have had no deal. The Agreement provides that the corporate debt was to be assumed by Tanner and further, that Woodard

would be personally released by Tanner for that debt.

The Court does not agree with Tanner that the release from personal liability, i.e. the benefit, is incidental to the Asset Purchase Agreement. While Tanner is correct that the agreement does not specify who will release Woodard from personal liability, it is implied that Tanner would do so as in the sentence before the release language, Tanner agrees to accept ROSCO's debt and in turn agreed to **release** Woodard from paying that debt. Accordingly, a *stipulation pour autrui* was created in favor of Woodard under the Agreement and Woodard is a third-party beneficiary of the Agreement.

Nevertheless, the Court does not agree that Woodard can compel arbitration based upon his status a third-party beneficiary. Paragraph 10.3 of the Asset Purchase Agreement provides "any and all disputes, controversies, or claims **arising out of or relating to this agreement** ... shall be determined by binding arbitration in New Orleans, Louisiana before a panel of three arbitrators." A plain reading of the arbitration clause demonstrates that it limits arbitration to disputes specifically arising out or related to the Agreement. Thus, regardless of whether Woodard was a signatory or a third-party beneficiary, the dispute between he and Tanner must arise out of or relate to the Agreement for the arbitration clause to be triggered.

On July 23, 2007, Tanner amended and restated its Complaint adding claims against Woodard individually. The causes of action asserted, while based upon similar factual allegations as the declaratory judgment action by Tanner against ROSCO, are separate and apart from the Agreement itself. Under the Agreement, Tanner agreed to purchase assets of ROSCO's business and assume ROSCO's corporate debt. The Agreement did not relate to and did not stipulate, other than a covenant not to compete for three years, any conditions of employment of Woodard by

9

Tanner. Further, the instant dispute between Tanner and Woodard as laid out in the Amended Complaint does not involve allegations or claims arising out of or related to Woodard breaching that covenant. The Agreement contemplated a separate Employment Agreement between Tanner and Woodard that would cover his employment with Tanner. The terms and conditions of that agreement and whether there was an arbitration clause in it are not before the Court. Accordingly, Woodard's third-party beneficiary status does not enable him to compel arbitration as to the claims brought against him because the claims do not arise out of or relate to the Agreement.

        *(B).*    *Estoppel*.

*Grigson v. Creative Artists Agency, LLC,* 210 F.3d 524 (5th Cir. 2000) is the seminal Fifth Circuit case dealing with the estoppel issue when a non-signatory to an arbitration agreement seeks to compel a signatory to that agreement to arbitrate the signatories' claims against the non-signatory. In *Grigson*, Ultra Muchos, Inc. and River City Films, Inc. entered into a Distribution Agreement with Columbia Tri-Star Home Video, Inc. for the distribution of a film starring (then unknown) Matthew McConaughey produced by Ultra Muchos and River City. Tri-Star only gave the movie a limited distribution. *Id.* at 526. Ultra Muchos, and River City filed suit against McConaughey and his agent, Creative Artists Agency, LLC, for tortious interference with the Distribution Agreement, alleging that the defendants pressured Tri-Star to limit the release. The defendants sought to compel arbitration under the Distribution Agreement although they were not signatories to that agreement. The district court granted the defendants' motion to compel. *Id.*

On appeal, the Fifth Circuit pointed out that although arbitration generally cannot be required for disputes involving a non-signatory to an arbitration agreement, a signatory to an arbitration agreement cannot "seek to hold [a] non-signatory liable pursuant to duties imposed by [an]

10

agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory." *Grigson,* 210 F.3d at 528. The court therefore concluded that equitable estoppel will allow a non-signatory to compel arbitration in two instances:

> First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the non-signatory. When each of a signatory's claims against a non-signatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. Second, application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises substantially interdependent and concerted misconduct allegations of by both the non-signatory and one of more of the signatories to the contract.

Id. at 527 (emphasis in original) (*quoting MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)). The court then looked to the plaintiffs' petition to determine whether the foregoing test was met. Because the complaint alleged that Creative Artists, individually and on behalf of McConaughey, interfered with the Distribution Agreement by pressuring Tri-Star not to make a major release of the movie, that Tri-Star failed to exercise its good faith judgment in promoting, exploiting, and distributing the movie although Tri-Star was not even a party to the litigation, that Creative Artists interfered with McConaughey's actor's contract for the movie, and that McConaughey himself breached his actors contract by interfering with and preventing "the theatrical release" (as defined by the Distribution Agreement) of the movie, the court concluded that both of the above circumstances were present and affirmed the district court's grant of the non-signatories' motion to compel arbitration. *Grigson,* 210 F.3d 529.

In *Francisco v. Stolt-Nielsen, S.A.,* 2002 WL 31697700, a seaman injured while employed

aboard the vessel M.V. STOLT ACHIEVEMENT sought to compel under a broad arbitration clause in the employment contract against three (3) defendants, none of which was a signatory to the employment contract.  The plaintiff pleaded the "single business entity" theory as the basis for liability against the defendants.  The defendants sought to compel arbitration pursuant to the employment contract although they were not signatories to that contract.

Applying *Grigson* as the applicable test for determining whether principles of equitable estoppel will permit a non-signatory to an arbitration agreement to compel arbitration, the Court concluded that the second circumstance outlined by *Grigson* was present and therefore, granted the defendant non-signatories' Motion to Compel.  The court stated:

> In the lawsuit against the moving defendants, plaintiff alleges that the relationship among the non-signatory defendants and the signatory may render them a "single business entity."  Under Louisiana law, the single business entity doctrine is invoked to render one corporation responsible for the liabilities of the other. Implicit in the single business entity doctrine is the idea that seemingly distinct corporations are in fact acting in concert to achieve certain goals. The Court therefore concludes that plaintiff alleges substantially interdependent and concerted misconduct by non-signatories and signatories.

*Id.* (citations omitted) (emphasis added) (*citing J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 320-21 (4th Cir.1988) (holding that "[w]hen the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even through the parent is not formally a party to the arbitration agreement")).

In *Norcom, Inc. v. CRG International, Inc*., 2002 WL 245984, Norcom and Network One executed a Wholesale Services Agreement whereby Network One agreed to provide telecommunications services to Norcom related to long distance telephone services.  Unable to

resolve certain billing-related disputes with Network One, Norcom filed suit seeking a temporary restraining order prohibiting Network One and OneStar Long Distance, Inc. from discontinuing services to Norcom's customers. OneStar was the manager of the services provided by Network One but was not a signatory to the Wholesale Services Agreement. OneStar sought to compel arbitration pursuant to the Wholesale Services Agreement; Norcom resisted based upon the fact that OneStar was not a party to the Wholesale Services Agreement.

In determining whether estoppel under *Grigson* was applicable, the court looked to the claims asserted by Norcom against OneStar. In its petition, Norcom alleged damages based upon negligence, fraud, tortious interference with contract and unfair and deceptive trade practices. Because "the claims made by Norcom against OneStar [were] ...factually based on the dispute as to amounts owed under the Agreement" and they "rel[ied] on the Agreement and involve the interdependent and concerted misconduct of both Network One and OneStar," the court concluded that both prongs of the *Grigson* test were satisfied and granted OneStar's Motion to Compel Arbitration. *Id* at 4.

The first circumstance in *Grigson* is not applicable here because, as stated *supra,* Tanner, the signatory to the Agreement containing an arbitration clause, does not rely on the terms of the written agreement in asserting its claims against Woodard, the non-signatory. Because each of a Tanner's claims against Woodard fails to make reference to or presume the existence of the Agreement, Tanner's claims do not arise out of and do not relate directly to the Agreement. In other words, the causes of action stand alone absent the Agreement. Accordingly, arbitration is not appropriate under the first test announced in *Grigson* and as applied in the jurisprudence discussed *supra.*

13

The second circumstance in *Grigson* is also not met. First, the claims and causes of action alleged in the Amended Complaint arise solely out of Woodard's alleged duties to Tanner as Tanner's employee. Second, unlike the cited cases, Tanner's claims against Woodard are not factually based on amounts owed under the Agreement, do not rely on the Agreement, and do not involve interdependent and concerted misconduct of both ROSCO and Woodard. Further, the Amended Complaint does not allege either that Woodard and ROSCO are a "single business entity" or that ROSCO would be responsible for the liabilities of Woodard based upon his alleged wrongful conduct. The facts involved in the declaratory judgment action against ROSCO may be similar to those raised against Woodard in the Amended Complaint, but they are not inherently inseparable. Here, the claims raised in the Amended Complaint clearly arise out of Woodard's alleged misconduct as an employee of Tanner and have nothing to do with ROSCO. Because the claims alleged are not substantially interdependent and do not allege concerted misconduct by the non-signatory (Woodard) and the signatory (Tanner), the second test of *Grigson* is not met.

Because Woodard has not met his burden in proving that he is entitled to compel arbitration either as a third-party beneficiary or pursuant to the equitable estoppel principles discussed above, his Motion to Compel Arbitration is **DENIED.**

 *(2). Remaining Motions.*

  *(i) Motion to Dismiss (Rec. Doc. 34).*

ROSCO and Woodard's Motion to Dismiss the Declaratory Judgment Action, Rec. Doc. 34, is **DENIED in part** and **GRANTED in part.** As stated herein, ROSCO and Tanner have agreed to arbitrate all of the claims and disputes brought in the declaratory judgment action. Although Tanner acknowledges that it is no longer seeking declaratory relief and is no longer making a claim

against ROSCO, it has not filed a Motion for voluntary dismissal of the declaratory judgment action. Accordingly, that action is still pending before this Court and the proper remedy is to stay any and all action regarding or related to the Tanner's declaratory judgment as to ROSCO pending resolution of the arbitration. *See* 9 U.S.C.A. § 3 of the Federal Arbitration Act.[1] Accordingly, the ROSCO's Motion to Dismiss is **DENIED** and that part of the action (as to ROSCO) is stayed.

The Motion to Dismiss the declaratory judgment action was filed not only against ROSCO, but also Woodard as the declaratory judgment action named Woodard as a defendant. However, no causes of action were raised against Woodard, individually, in the declaratory judgment action. Further, Tanner has filed an amended and restated complaint as to the claims against Woodard, urging that it is bringing those claims only against him in this action due to his employment. Accordingly, the Motion to Dismiss, Rec. Doc. 34, is **GRANTED** as to Woodard and any claims potentially raised in the declaratory judgment action against Woodard are dismissed.

>   *(ii)   Tanner's Motion for Preliminary Injunction to Enjoin Arbitration. (Rec. Doc. 24).*

Tanner's Motion for Preliminary Injunction to Enjoin Arbitration requests that the arbitration invoked by both ROSCO and Woodard be enjoined. This Motion is **DENIED** as **MOOT**. As to ROSCO, Tanner and ROSCO have agreed to arbitrate their claims; hence, the Motion is rendered moot as to the relief sought by Tanner against ROSCO. As to Woodard, this Order denying his

---

[1] 9 U.S.C.A. § 3 provides: If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration. *See also Zimmerman v. International Companies & Consulting, Inc.*, 107 F.3d 344 (5th Cir. 1997)(finding that mandatory stay provision of Federal Arbitration Act does not apply to those who are not contractually bound by the arbitration agreement.) Accordingly, the remaining claims against Woodard individually are not stayed.

Motion to Compel arbitration likewise renders Tanner's Motion for Preliminary Injunction to Enjoin Arbitration moot.

      (iii) *Tanner's Motion for Preliminary Injunction. (Rec. Doc. 25).*

As with the Motion for Declaratory Judgment, Tanner's Motion for Preliminary Injunction groups ROSCO and Woodard together as defendants but fails to request any relief specifically requesting an injunction against Woodard. Clearly, the agreement to arbitrate the claims between Tanner and ROSCO renders the Motion **MOOT** as it pertains to ROSCO. Further, as the Motion for Preliminary Injunction was filed prior to the Amended Complaint adding individual claims against Woodard and because it does not specifically request Woodard be enjoined from any conduct, the Motion is **DENIED** insofar as it is filed against him individually. Accordingly, Tanner's Motion for Preliminary Injunction is **DENIED.**

For the foregoing reasons, the Court orders as follows:

**IT IS ORDERED** that the Motion to Compel Arbitration filed by ROSCO and Allen R. Woodard (Rec. Doc. 20) is **DENIED.**

**IT IS FURTHER ORDERED** that the Declaratory Judgment portion of this case against ROSCO **only** is stayed pending the outcome of the arbitration between ROSCO and Tanner Companies, Inc. At any time after the arbitrator reaches a decision, the Declaratory Judgment action may be dismissed or reopened upon motion of either party.

**IT IS FURTHER ORDERED** that the Motion to Dismiss (Rec. Doc. 34) is **DENIED** in part and **GRANTED** in part. The Motion is **DENIED** insofar as it requests dismissal of Tanner's Declaratory Judgment action against ROSCO. The Motion is **GRANTED** insofar as it requests dismissal of Tanner's Declaratory Judgment action against Allen Woodard.

**IT IS FURTHER ORDERED** that Tanner's Motion for Preliminary Injunction to Enjoin Arbitration (Rec. Doc. 24) is **DENIED**.

**IT IS FURTHER ORDERED** that Tanner's Motion for Preliminary Injunction (Rec. Doc. 25) is **DENIED**.

New Orleans, Louisiana, this 10th day of January, 2008.

_____
**G. THOMAS PORTEOUS, JR.**
**UNITED STATES DISTRICT JUDGE**